## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**SAYEH SHARIFYMOGHADDAM**, *et al.*,

     *Plaintiffs,*

**v.**

**ANTONY BLINKEN**, *in his official capacity as Secretary of State*, *et al.*,

     *Defendants.*

Case No. 23-cv-1472-RCL

### <u>MEMORANDUM OPINION</u>

Both plaintiffs, Sayeh Sharifymoghaddam and Seyyed Mahmood Jafari Sadeghi, are dual Iranian and Canadian nationals. They bring suit under the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1), and the Mandamus Act, 28 U.S.C. § 1361, to compel a final decision on their immigrant visa applications. They contend that the U.S. Secretary of State, the Acting Deputy Assistant Secretary for Visa Services, and the Consul General of the U.S. Consulate in Montreal, Canada (collectively, "defendants"), have unreasonably delayed rendering a decision on whether they can immigrate to the United States. Defendants have moved to dismiss the case for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted. Upon consideration of the parties' briefing, the record, and the applicable law, the Court will **GRANT** defendants' motion and dismiss plaintiffs' Complaint for failure to state a claim.

### I.        BACKGROUND

#### A.  Factual History

The Court draws the following factual allegations from plaintiffs' Complaint, which the Court must accept as true when evaluating defendants' motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs, who are married, are each distinguished artificial intelligence researchers. Compl. ¶¶ 10, 44–45, ECF No. 1. Both work for startups that would like them to relocate from Canada to the United States. Compl. ¶ 10. Consequently, on May 24, 2019, Dr. Sharifymoghaddam filed an I-140 National Interest Waiver EB-2 immigration petition. Compl. ¶ 44. EB-2 visas permit noncitizens with "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation . . . to enter the United States to continue work in the area of extraordinary ability." 8 U.S.C. § 1153(b)(1)(A). As Dr. Sharifymoghaddam's spouse, Dr. Sadeghi is a derivative beneficiary of her immigration petition. Compl. ¶ 45; *see* 8 U.S.C. § 1153(d) ("A spouse or child . . . shall . . . be entitled to the same status . . . if accompanying or following to join, the [petitioning] spouse or parent."). United States Citizenship and Immigration Services approved Dr. Sharifymoghaddam's petition on April 9, 2020. Compl. ¶¶ 3, 44.

After approving, USCIS forwarded the matter to the U.S. Department of State for further processing. Compl. ¶ 46. Plaintiffs timely filed their DS-260 visa applications with the National Visa Center on July 13 and 14, 2020. Compl. ¶ 46. On November 23, 2022, Plaintiffs interviewed with the U.S. Consulate in Montreal. Compl. ¶ 47. Following the interview, Plaintiffs were informed that their applications were "refused for administrative processing" and required supplemental paperwork. Compl. ¶¶ 48, 52; 221(g) Notice, ECF No. 1-2.[1] Plaintiffs were

---

[1] "Courts may take judicial notice of information that is posted on official public websites of government agencies when evaluating a motion to dismiss." *Chowdhury v. Blinken*, No. 21-cv-1205 (RCL), 2022 WL 136795, at *1 n.1 (D.D.C. Jan. 14, 2022) (citing *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016)). The Court will take judicial notice that the Department of State's Visa Status Check website lists plaintiffs' visa applications as "Refused." *See Visa Status Check*, U.S. Dep't of St., https://ceac.state.gov/CEACStatTracker/Status.aspx [https://perma.cc/NS4H-BST9]. This is consistent with plaintiffs' allegation that their applications have been "refused for administrative processing." Compl. ¶ 52; *see* 221(g) Notice.

instructed to complete Form DS-5535, Supplemental Questions for Visa Applicants, which requires applicants to submit detailed residential, employment, and travel history. Compl. ¶ 48. Plaintiffs timely submitted the requested information. Compl. ¶ 49. Since then they "have not received any updates" and their applications remain "refused for administrative processing." Compl. ¶¶ 50–52. When they filed their Complaint, plaintiffs had been waiting six months without action by the government; they have now been waiting fifteen months. As a result, plaintiffs face "lack of mentorship from senior leadership in their respective startups, potential loss of employment, and hind[rance] to their career progression." Compl. ¶ 58.

## B. Procedural History

On May 23, 2023, plaintiffs filed their Complaint requesting that this Court order Secretary of State, Antony Blinken; Acting Deputy Assistant Secretary for Visa Services, Julie Stufft; and Consul General of the U.S. Consulate in Montreal, Canada, Ana Escrogima to adjudicate Plaintiffs' immigrant visa applications. Compl. ¶ 14. Plaintiffs seek relief under the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361. On August 23, 2023, Defendants filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. Defs.' Mot. 1, ECF No. 8. After the parties finished briefing defendants' motion, plaintiffs filed four successive notices of supplemental authority, all of which were directed to out-of-circuit district court decisions. ECF Nos. 13, 16, 18, 19. Plaintiffs also filed a self-styled notice of change in material facts, directing the Court's attention to a sworn declaration from a Department of State employee filed by the government in an unrelated case that purportedly undermines defendants' motion to dismiss. ECF No. 20. Defendants' motion is now ripe for review.

## II.   LEGAL STANDARDS

### A.  Motions to Dismiss

A defendant in a civil action may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A court considering such a motion must take all the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). "However, those factual allegations receive closer scrutiny than they do in the Rule 12(b)(6) context," and "a court that is assessing a motion brought under Rule 12(b)(1) may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim," including to "resolve factual disputes concerning jurisdiction." *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020) (K.B. Jackson, J.) (internal quotation marks and citations omitted).

A defendant in a civil action may also move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court evaluating a Rule 12(b)(6) "motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor." *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 40 (D.D.C. 2018). However, "[a] court need not accept a plaintiff's legal conclusions as true, nor must a court presume the veracity of legal conclusions that are couched as factual allegations." *Id.* (citation omitted).

**B.  Unreasonable Delay**

Plaintiffs' APA and mandamus claims rest on the same theory: that the Department of State unreasonably delayed the adjudication of plaintiffs' visa applications. Compl. ¶¶ 53–57. The APA commands that "within a reasonable time, each agency shall proceed to conclude a matter presented to it" and permits a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1). A court evaluating a claim of unreasonable delay must "consider whether the agency's failure to respond is 'so egregious' as to warrant relief." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 147 (D.D.C. 2021) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70, 79 (D.C. Cir. 1984)). The D.C. Circuit has identified six factors for courts to consider when making this determination:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotations and citations omitted). "The standard for undue delay under the Mandamus Act . . . is identical to the APA standard." *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)).

## III.    DISCUSSION

Defendants raise four arguments for dismissal: (1) plaintiffs lack Article III standing to sue the Secretary of State because he has no role in adjudicating plaintiffs' visa applications and is unable to redress plaintiffs' alleged injury; (2) the Court lacks subject matter jurisdiction because

the defendants are shielded by the doctrine of consular nonreviewability; (3) the Court lacks mandamus jurisdiction because defendants are not subject to a discrete, non-discretionary duty; and (4) plaintiffs fail to state a claim because the alleged delay is not unreasonable under the six-factor test prescribed in *TRAC*. Defendants' first two arguments fail. However, even assuming defendants are subject to a discrete, non-discretionary duty, plaintiffs' claims fail under Rule 12(b)(6) because a six (now fifteen) month delay is not unreasonable as a matter of law.

## A. Article III Standing

Although defendants do not expressly cast their argument that the Secretary of State has "no role" in adjudicating plaintiffs' visa applications in Article III standing terms, Defs.' Mot. 4, the Court will construe it as a redressability challenge, *see Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (describing the "'irreducible constitutional minimum of standing" as "(1) an injury in fact that is concrete and particularized as well as actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, that the injury will be *redressed* by a favorable decision" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (emphasis added) (internal quotation marks omitted))). So construed, defendants' argument is wholly unpersuasive. "The Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.*, grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)). But although "the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications 'within a reasonable time,' as the APA requires." *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18,

2023); *see also Ahmadi v. Scharpf*, No. 23-cv-953 (DLF), 2024 WL 551542, at *4 (D.D.C. Feb. 12, 2024). Accordingly, the Secretary of State could redress the alleged injury to plaintiffs by directing the timely adjudication of their applications.[2]

## B.  Consular Nonreviewability

"Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao*, 985 F.3d at 1024 (citing *Saavedra Bruno*, 197 F.3d at 1159). Defendants argue that refusing a visa for administrative processing qualifies as "withhold[ing] a visa" within the meaning of *Baan Rao*. Defs.' Mot. 12–16 (citing *Baan Rao*, 985 F.3d at 1024). Courts in this District, including this one, have repeatedly rejected the view that consular nonreviewability applies to decisions to provisionally reject visa applications for administrative processing. *See, e.g.*, *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020) (Lamberth, J.); *Pourabdollah v. Blinken*, No. 23-cv-1603 (DLF), 2024 WL 474523, at *4–5 (D.D.C. Feb. 7, 2024) (Friedrich, J.); *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 159–60 (D.D.C. 2022) (Boasberg, J.); *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (Moss., J.); *Meyou v. U.S. Dep't of State*, No. 21-cv-2806 (JDB), 2022 WL 1556344, at *2 (D.D.C. May 17, 2022) (Bates, J.); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 17–18 (D.D.C. 2022) (Cooper, J.). That is what plaintiffs allege happened here. Plaintiffs' applications were provisionally refused for administrative processing so that plaintiffs could provide supplemental information regarding their residential, employment, and

---

[2] Because the Court has a "special obligation to satisfy [itself] of [its] own jurisdiction," *Cicero v. Mnuchin*, 857 F.3d 407, 415 (D.C. Cir. 2017) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998)), the Court additionally finds that plaintiffs have adequately alleged the violation of "a procedural right to reasonably expeditious agency action that is tethered to [their] concrete professional and financial interest[s]" in career progression and continued employment, *see, e.g.*, *Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *2 (D.D.C. Jan. 17, 2023). This suffices to establish injury in fact. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Altogether, the Court is satisfied that plaintiffs have established Article III standing.

travel history. Compl. ¶¶ 48–49. Plaintiffs did so but have not yet received a final decision on their visa applications. Compl. ¶¶ 50–52. The Court adopts the reasoning of the above decisions and concludes that consular nonreviewability is inapplicable under these circumstances. Consular nonreviewability does not entitle defendants to dismissal.

## C.  Unreasonable Delay

The Court has rejected defendants' standing and consular nonreviewability arguments. Nevertheless, the Court concludes that defendants are entitled to dismissal under Rule 12(b)(6) because plaintiffs have failed to state a claim for unreasonable delay. Courts in this District, including this one, have repeatedly held that it is appropriate to grant a motion to dismiss based on the "application of the *TRAC* factors to the factual allegations of a complaint asserting a claim of 'unreasonable delay.'" *Chowdhury*, 2022 WL 136795, at *3 (quoting *Desai v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *5 (D.D.C. Mar. 22, 2021)).[3] Ordinarily, before assessing the unreasonableness of an alleged delay, the Court would undertake to determine whether plaintiffs assert "a *discrete* agency action that [the agency] is *required* to take." *Norton*, 542 U.S. at 64. But the Court need not resolve that question because defendants would still be entitled to dismissal even if it were answered affirmatively. *See, e.g.*, *Pourabdollah*, 2024 WL 474523, at *6 & n.5 (turning to the unreasonableness of the alleged delay after assuming without deciding the existence of a "discrete, required duty"). Applying the *TRAC* factors to the

---

[3] Plaintiffs refused to address the *TRAC* factors in their opposition because their "[u]nreasonable delay claims require fact-based inquiries not suitable for disposition at this stage of litigation." Pls.' Opp'n 22, ECF No. 10. But "Courts in this district have routinely decided whether an agency's delay is unreasonable when processing claims at the motion-to-dismiss-stage." *Ahmadi*, 2024 WL 551542, at *5 n.8 (first citing *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (collecting cases); and then citing *Khan v. Blome*, No. 22-cv-2422 (JEB), 2022 WL 17262219, at *4 (D.D.C. Nov. 29, 2022)). The Court deems defendants' unreasonable delay arguments conceded and, given plaintiffs' total failure to engage with defendants' *TRAC* factors analysis, declines to consider any substantive arguments later raised in plaintiffs' notices of supplemental authority. *See Brett v. Brennan*, 404 F. Supp. 3d 52, 59 (D.D.C. 2019) ("It is well-understood that 'if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.'" (quoting *Wannall v. Honeywell*, Inc., 775 F.3d 425, 428 (D.C. Cir. 2014)).

allegations in the Complaint and judicially noticeable facts, this Court agrees that plaintiffs have failed to plausibly allege that the delayed adjudication of their applications was unreasonable.

### 1. *TRAC* Factors 1 and 2

The first *TRAC* factor, which commands that the time agencies take to make decisions must be governed by a rule of reason, is the "most important." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The second *TRAC* factor "provides that the content of such a rule [of reason] may be found in a 'timetable or other indication . . . in the enabling statute.'" *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (quoting *TRAC*, 750 F.2d at 80). Put together, these factors "get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale" and whether there is any "rhyme or reason" for the agency's delay. *Id.*

The first and second factors favor defendants. Plaintiffs do not contest that "[t]here is no statutory or regulatory timeframe within which the State Department or a consular officer must [adjudicate] . . . the visa applications at issue." *See* Defs.' Mot. 18–19; Pls.' Opp'n 22–23. Lacking a statutory timeline, courts "typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Rahman*, 2023 WL 196428, at *4 (quoting *Sawahreh*, 2022 WL 4365746, at *5). Recall that plaintiffs had been waiting for only six months before they filed their Complaint; now, they have been waiting for fifteen months.[4] That delay is

---

[4] Plaintiffs argue in one of their notices of supplemental authority that the length of delay should be measured from the date that plaintiffs submitted their initial Form I-140 petition, not the date of plaintiffs' visa interview. ECF No. 16, at 2. Setting aside that plaintiffs waived this argument, Courts in this District routinely analyze delay claims based on the date of placement in administrative processing, not the date that plaintiffs filed their application. *See, e.g., Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (measuring from date visa application was refused for administrative processing).

reasonable under the circumstances. *See, e.g.*, *Mohammad v. Blinken*, No. 20-cv-3696 (TNM), 2021 WL 2866058, at \*4 (D.D.C. July 8, 2021) (finding a delay of "less than two years . . . 'not unreasonable as a matter of law, given the circumstances'" (quoting *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020)).

### 2. *TRAC* Factor 4

The fourth *TRAC* factor, which asks the Court to consider the effect of expediting delayed action on agency activities of a higher or competing priority, strongly weighs in defendants' favor. "Where the agency action sought is one of many similar adjudications that the agency must complete, the court should be even more cautious before intervening." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153 (D.D.C. 2017). That is because "[c]ourts are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space.'" *Pourabdollah*, 2024 WL 474523, at \*7 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)).[5] Consequently, this factor "often . . . carries the greatest weight." *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 15 (D.D.C. 2022) (citing *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023). Although the government seemingly acknowledges that the effect of prioritizing two visa applications on agency resources may be minimal, *see* Defs.' Mot. 22, the "accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities," *Tate*,

---

[5] Plaintiffs filed a self-styled notice of change in material facts in which they suggest that the government, by way of a declaration filed in an unrelated case, has acknowledged that "there [is] no queue in national security vetting." ECF No. 20, at 1. But even if no such "queue" in fact exists, the critical point is that agencies get to prioritize their projects and allocate their resources. *See In re Barr*, 930 F.2d at 76 ("The agency is in a unique—and authoritative—position to views its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.'). Plaintiffs offer no persuasive reason to reject defendants' representation that prioritizing these applications would necessarily come at the expense of other similarly situated applicants.

513 F. Supp. 3d at 150. And a court order prioritizing plaintiffs' applications, unaccompanied by any "net gain" in visa application processing, would necessarily be "to the detriment of other similarly situated visa applicants." *Id.* at 149 (quoting *Sarlak*, 2020 WL 3082018, at *6); *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at *7 (D.D.C. Mar. 22, 2021). This Court takes pause before blithely "reordering agency priorities." *See In re Barr*, 930 F.2d at 76.

### 3. *TRAC* Factors 3 and 5

"The third and fifth factors are often considered together, and require the Court to consider plaintiffs' interests, health, and welfare." *Chowdhury*, 2022 WL 136795, at *4 (alteration brackets omitted) (quoting *Thakker*, 2021 WL 1092269, at *7). These factors slightly weigh in favor of plaintiffs. Plaintiffs contend that they presently face "lack of mentorship from senior leadership in their respective startups, potential loss of employment, and hind[rance] to their career progression." Compl. ¶ 58. Plaintiffs also allege that they have been unable to "fully focus on their work." Compl. ¶ 10. "Taking these alleged adverse effects as true, as the Court must at this stage, the plaintiffs are in a worse position than visa applicants who merely claim that their lives have been put 'on hold' by the visa delay." *Pourabdollah*, 2024 WL 474523, at *8 (internal citation omitted) (quoting *Palakuru*, 521 F. Supp. 3d at 53). This factor is only slightly beneficial to plaintiffs, however, because the alleged adverse effects are relatively minor compared to other employment visa applicants. *See e.g.*, *Da Costa*, 643 F. Supp. 3d at 15 (noting that delay forced plaintiffs to remain in city where they "fear for their lives each time they venture out their front door" and where "residents' access to drinking water, electricity, and other public services is substantially limited" (citations omitted)).

### 4. *TRAC* Factor 6

The last *TRAC* factor asks whether the agency has acted in bad faith. *Fakhimi v. U.S. Dep't of State*, No. 23-cv-1127 (CKK), 2023 WL 6976073, at \*11 (D.D.C. Oct. 23, 2023). The Circuit has cautioned that a finding of bad faith or impropriety is not necessary to hold that an agency action is unreasonably delayed. *TRAC*, 750 F.2d at 80. In any event, plaintiffs have not alleged bad faith on the part of defendants. Accordingly, this factor is neutral. *See Chowdhury*, 2022 WL 136795, at \*5.

\* \* \*

The Court sympathizes with plaintiffs. They are obviously highly talented individuals, and the delays in visa processing are interfering with their career progression and ability to contribute to artificial intelligence research in the United States. However, the *TRAC* factors on balance favor defendants. Plaintiffs, therefore, have failed to state a claim for unreasonable delay under the APA.

### IV.    CONCLUSION

For the foregoing reasons, the Court will **GRANT** defendants' motion to dismiss. A separate Order consistent with this Memorandum Opinion shall issue.

Date: March ___, 2024

Royce C. Lamberth
United States District Judge